270 So.2d 270 (1972)
ALLEN STATE BANK, Plaintiff and Appellant,
v.
The TRAVELER'S INDEMNITY COMPANY, Defendant and Appellee.
No. 4032.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1972.
*271 Gravel, Roy & Burnes, by Stephen E. Everett, Alexandria, for plaintiff-appellant.
Holt & Woodley, by Meredith T. Holt, Lake Charles, for defendant-appellee.
Before SAVOY, CULPEPPER, and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is an action for recovery under an indemnity bond which was issued to the Allen State Bank by The Traveler's Indemnity Company. The bank claims losses suffered by it as a result of the alleged fraud of one Charles C. Derouen in connection with two bank loans. The defendant ultimately moved for summary judgment which was granted by the trial court and the bank's suit was dismissed. The bank appeals.
Charles C. Derouen was a former President of the Allen State Bank but discontinued his employment with the bank on or about July 1, 1966. On December 6, 1966, he borrowed $40,000 from the bank and on December 29, 1966, borrowed an additional $10,000. Both loans were represented by unsecured promissory notes payable September 6, 1967. Derouen negotiated the loans with Paul Trahan, an executive officer of the bank after the loans had been approved by the Board of Directors. Some months after the loans were made the bank requested collateral, which was furnished by Derouen in the form of fifty-one notes of third persons which he held and which he assigned to the bank. That *272 assignment is dated June 1, 1967. Derouen ultimately defaulted on both promissory notes, and in an effort to collect the various balances due on the assigned notes, the bank discovered evidence of fraud and forgery in connection with some of those notes. The bank did, however, succeed in recovering some $16,000 which was applied to Derouen's indebtedness under the two aforementioned unsecured promissory notes.
The bond issued by defendant was in effect during the transactions in question and is known as a banker's blanket indemnity bond. It is designed to cover, in addition to the usual employee and officer infidelity losses, certain losses which the bank might suffer from on-premise crimes, such as robbery, larceny, theft, false pretenses, etc., losses from in-transit loss of property, loss through forgery or alteration of certain specified documents, and other losses not material to this case.
The motion for summary judgment was tried and the district court had before it the pleadings, certain exhibits and an affidavit, the bond, and the depositions of Charles C. Derouen, of John D. Richards, who had been President of the plaintiff bank since September 1, 1969, and of Josh H. Weaver, a claims representative for the defendant indemnity company.
It is clear from the depositions that at the time the bank made the two aforementioned loans to Charles C. Derouen it did not require security of any kind for said loans. Nor is there any proof or even suggestion that the loans were made contingent upon the furnishing in the future, of any collateral or security. Nor is there any proof or even suggestion that there was any fraud or impropriety on the part of either Derouen or Paul Trahan or whomsoever, at the time the loans were made. It was not until some months after the loans were completed that the bank determined that it should attempt to obtain collateral of some kind from Derouen. It was then, on June 1, 1967, or thereabout that Derouen furnished the aforementioned third party notes, some of which, according to an investigation by the bank, were forged.
Clause (A) of the bond covers losses by the bank through dishonest, fraudulent, or criminal action of any of its employees. That clause is obviously not applicable here in that Charles C. Derouen was not an employee of the bank at the time he made the two loans in December, 1966.
A further examination of the bond in question shows further coverages as follows:
1. Clause B: "Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, . . ."
2. Clause D: "Any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution, *273 or (2) through the payment by the Insured of promissory notes which are payable at the Insured or which are or purport to be notes payable at the Insured under instructions of any depositor thereof, and which are actually paid by the Insured out of funds on deposit with it, and which prove to be forged or altered or which bear forged endorsements.
"Any check or draft (a) made payable to a fictitious payee and endorsed in the name of such fictitious payee or (b) procured in a face to face transaction with the maker or drawer thereof or with one acting as agent of such maker or drawer by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one impersonated, shall be deemed to be forged as to such endorsement. . . ."
3. Clause E: "Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the Insured's having, in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments. . ."
In that Charles C. Derouen was not required to give the bank any collateral when the two loans were made, Clause (E) would not cover the instant loss. The bank gave nothing of value and extended no credit or in fact did anything referred to in coverage (E) predicated upon the fifty-one promissory notes, which in fact were not pledged until almost six months after the bank made the loans to Derouen. Additionally, there is no loss under coverage (B) because of the loan exclusion provision found under Section 1, Paragraph (d) which provides:
"THIS BOND DOES NOT COVER: * * *
(d) Any loss the result of the complete or partial nonpayment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."
There is likewise no coverage under Clause (D) because the fifty-one belatedly pledged promissory notes are not the instruments defined in that clause.
The bond is not a policy of credit insurance and does not protect the bank when it simply makes a bad business deal. The real cause of the loss sustained by the Allen State Bank in this case was Derouen's failure to repay the loan and not any fraud perpetrated on the bank at the time the loan was made. Had the assigned notes been pledged at the time of and as an incident and requirement of the loans, and *274 fraud shown on the part of Derouen in connection therewith, then of course, the bank would be protected, at least under Clause (E).
In view of the foregoing we conclude that the trial judge was correct in granting defendant's motion for summary judgment. Arts. 966, 967, Louisiana Code of Civil Procedure.
The judgment of the trial court is therefore affirmed at plaintiff-appellant's costs.
Affirmed.