Rockingham
No. 81-178

EXETER BANKING COMPANY

v.

NEW HAMPSHIRE INSURANCE COMPANY

December 8, 1981

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Edward A. Haffer* on the brief and orally), for the plaintiff.

*Kfoury & Williams*, of Manchester (*Robert L. Elliott* on the brief and orally), for the defendant.

BOIS, J. This case involves a petition for declaratory judgment brought by the plaintiff, Exeter Banking Company, to determine the extent of its coverage under a standard "bankers blanket bond" issued by the defendant, New Hampshire Insurance Company. Following a hearing, a Master (*Mayland H. Morse, Jr.*, Esq.) found that the insurance policy in question did not cover losses which the plaintiff bank might suffer as the result of its alleged liability to third parties for negligence and breach of fiduciary duty. The Superior Court (*Contas*, J.) approved the master's recommendation to deny the plaintiff bank's petition, and the bank challenges the court's decision. We affirm.

The dispute stems from the bank's transactions with two of its customers, Gloria and Gwendolyn Kent. From 1976 to 1979, the Kents had substantial financial dealings with Steven Straw, an alleged art investor, who was not an employee, agent, or customer of the bank. On May 17, 1979, the plaintiff bank loaned Gloria Kent $300,000 which she sought to invest, through Straw, in a collection of paintings. The bank disbursed the loan in four checks, drawn on itself and payable to Gloria Kent and Steven Straw.

Straw, however, did not intend to invest the money in art work; he sought to use the funds for his own purposes. After both payees endorsed the checks, Straw negotiated them to David Benoit, who was both a personal creditor of Straw and a customer of the plaintiff bank. Benoit subsequently negotiated the checks to the bank, which duly accepted them and credited his account. The paintings were never purchased by Straw.

In a second transaction occurring on May 24, 1979, the plaintiff bank, pursuant to the Kents' requests, drew five checks totalling $425,000, payable to Richard Benedek, whom Straw claimed was an escrow agent for an art purchase, but who was really a creditor of Straw. The checks were reviewed by Gloria Kent and delivered by the plaintiff bank in the presence of Gloria Kent, her sister Gwendolyn, and Straw. The Kents reimbursed the bank for these checks, which were drawn, in the ordinary course of business, on the bank's account at the First National City Bank in New York City. When the checks were presented at the First National City Bank, the New York bank properly honored them and debited the plaintiff bank's account. Once again, the Kents never received the paintings which Straw promised.

As a result of these events, Straw was indicted in Massachusetts for stealing and embezzling $300,000 and fraudulently inducing the Kents to part with $425,000 by false pretense. He pleaded guilty to both charges.

In August 1979, the Kents brought suit in the superior court against the plaintiff bank, charging it with breach of fiduciary duty and negligence in the May 17 and May 24 transactions. Regarding the $300,000 transaction, Gloria Kent specifically claimed that the plaintiff bank knowingly and improperly permitted payment of the checks to David Benoit for purposes which she did not intend. As to the $425,000 transaction, the Kents claimed that the bank disregarded their directions and intentions, by allowing delivery of the funds to Benedek free of any escrow.

With the Kents' suit pending, the bank brought a petition for a declaratory judgment in superior court. It sought a ruling that section (E)(1)(b) of the bankers blanket bond, which the defendant had issued to it, provided full coverage for any liability which the plaintiff might incur as a result of the Kents' suit. The plaintiff bank further argued that, although it had not yet sustained any loss as a result of the Kents' suit, the policy entitled it to immediate indemnification for court costs and attorneys' fees which it had already incurred and paid in the Kent suit and in the declaratory judgment proceedings. The presiding master rejected these arguments, and the plaintiff appealed to this court.

As a result of Gloria Kent's withdrawal of her claim against the bank regarding the $300,000 transaction, we are left with three questions to resolve: (1) whether section (E)(1)(b) (entitled "Securities") of the blanket bond provides coverage for negligent acts of the insured, and for indirect losses resulting from the insured's potential liability to third parties; (2) whether the Kents' claim regarding the $425,000 transaction gives rise to coverage under section (E)(1)(b); and (3) whether the policy requires the defendant to indemnify the plaintiff bank for court costs and attorneys' fees incurred in defending against the $300,000 and $425,000 Kent claims and in bringing the declaratory judgment action.

Section (E)(1)(b) states that the insurer will indemnify the insured for:

> "Loss . . . through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon, any securities, documents or other written instruments which prove to have been . . . raised or otherwise altered or lost or stolen . . . ."

The master found that the blanket bond policy resembled a fidelity bond and that it only covered losses "arising from dishonesty, infidelity, or lack of integrity of the insured's employees or other fiduciaries." He also found that section (E)(1)(b) did not afford coverage for any losses resulting from the plaintiff bank's negligence, or for losses arising from the bank's potential liability to the Kents.

■■ "In reaching the proper interpretation [of a contract] we require that the words and phrases used by the parties be given their common meaning . . . and this court will determine the meaning of the contract based upon the meaning that would be attached to it by a reasonable person." *Catamount Construction, Inc. v. Town of Milford*, 121 N.H. 781, 782–83, 435 A.2d 123, 124 (1981) (quoting *Murphy v. Doll-Mar, Inc.*, 120 N.H. 610, 611–12, 419 A.2d 1106, 1108 (1980)). An insurance contract, moreover, should be construed in its entirety. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 768, 423 A.2d 980, 983 (1980).

With these principles in mind, we now consider the master's ruling that the blanket bond provided only fidelity coverage, and that

section (E)(1)(b) did not afford coverage for the bank's negligent acts or third-party liability.

 A fidelity bond exists when an insurer "agrees to indemnify the insured against loss arising from the want of integrity, fidelity, or honesty of employees or other persons holding positions of trust." 13 COUCH ON INSURANCE 2d § 46:2, at 133 (Anderson ed. 1965); *see Salley Grocer Co. v. Hartford Accident & Indem. Co.*, 223 So. 2d 5, 8 (La. Ct. App. 1969). We agree with the master that the record before us does not support the existence of a claim for dishonesty, infidelity, or lack of integrity of the bank's employees or other fiduciaries. Coverage under the bond, however, is not limited solely to losses resulting from employee dishonesty and fraud. The bond also includes coverage for property losses, and losses arising from forgery or alteration, securities dealings, redemption of United States Savings bonds, counterfeit currency, and extortion. Certainly, an insured, viewing the policy as a whole, *see Trombly v. Blue Cross/Blue Shield*, 120 N.H. at 768, 423 A.2d at 983, would conclude that it is more than a fidelity bond. Consequently, the master erred in ruling that the blanket bond provided only fidelity coverage.

Section (E)(1)(b), moreover, is listed under the heading "Securities" and therefore concerns coverage for losses arising out of securities transactions; it does not involve fidelity coverage, which more appropriately falls under the section entitled "Fidelity." Thus, in addition to misconstruing the general nature of this blanket bond, the master failed to distinguish coverage under section (E)(1)(b) from coverage under the fidelity portion of the bond. He erroneously assumed that this litigation involved fidelity coverage.

 Section (E)(1)(b) does not clearly indicate whether it affords coverage for negligent acts which otherwise fall within its provisions. Section seven (entitled "Limit of Liability") of the conditions and limitations portion of the policy, however, implicitly recognizes coverage for certain unspecified losses "caused by all acts or omissions by any person." When ambiguities exist, we will construe insurance contracts most favorably to the insured party. *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 762, 435 A.2d 507, 509 (1981). In light of the noted provisions in section seven and the policy's failure to specifically exclude coverage for negligence, we conclude that section (E)(1)(b) provides coverage for the alleged negligent acts of the plaintiff if the other requirements of this section are satisfied. *See First Nat. Bank of*

*Ft. Walton B. v. United States F. & G. Co.*, 416 F.2d 52, 57 (5th Cir. 1969).

■ Similarly, we hold that section (E)(1)(b) provides coverage for indirect losses which result from the bank's potential liability to the Kents and which otherwise fall within the terms of this section. *Cf. First Nat. Bank of Bowie v. Fidelity & Cas. Co.*, 634 F.2d 1000, 1003-04 (5th Cir. 1981); *Farmers & Merch. St. Bank v. St. Paul Fire & Marine*, 309 Minn. 14, 18-19, 242 N.W.2d 840, 843 (1976). *But cf. Omaha Bank v. Aetna Cas. & Surety Co.*, 207 Neb. 782, 791, 301 N.W.2d 564, 569 (1981). Although the policy excludes certain kinds of losses from coverage, and contains numerous riders limiting the defendant's liability, it neither excludes nor limits the defendant's liability for indirect losses. In addition, section (D) (entitled "Court Costs and Attorneys' Fees") which appears under the heading "General Agreements," suggests that in some circumstances a "claim" established against the insured could constitute "a valid and collectible loss." We therefore reject the master's conclusion that section (E)(1)(b) covers only direct losses to the plaintiff bank.

Having determined that section (E)(1)(b) of the blanket bond provides coverage for negligent acts and indirect losses, we next consider whether section (E)(1)(b) covers the Kents' specific claim regarding the $425,000 transaction.

■ In their broadest sense, the provisions in section (E)(1)(b) which are at issue in this case essentially afford coverage only for losses arising in two situations: First, where the insured purchases, acquires, accepts, receives, sells, delivers or otherwise acts upon "securities, documents or other written instruments *which prove to have been . . . stolen*"; and second, where the insured gives value, extends credit, or assumes any liability *"on the faith of . . .* securities, documents or other written instruments which prove to have been . . . stolen." (Emphasis added.)

Even assuming *arguendo* that the plaintiff bank sold or delivered securities, documents, or other written instruments, we find that the $425,000 transaction does not fall within either of the factual settings mentioned above. In order to obtain coverage under the first scenario, the insured's actions must concern instruments "which prove to have been . . . stolen." By using the past tense of the verb steal, the policy requires that the "stealing" occur prior to the insured's actions.

In the instant case, the plaintiff merely drew, sold and delivered the five checks in question; the First National City Bank, as drawee, paid the checks. Although we reserve judgment on whether the

checks were ultimately stolen, it is obvious that they were not stolen when the plaintiff initially drew, sold, and delivered them to the parties. The transaction thus does not resemble the first situation wherein the insured is entitled to coverage.

■ Furthermore, the plaintiff's conduct does not fall within the second set of circumstances for which coverage is provided—when the insured has given value, extended credit, or assumed any liability, "on the faith of" the documents specified.

In construing section (E) of the bankers blanket bond, we note that "[t]he phrase, 'on the faith of,' clearly signifies something done 'in reliance upon.' " *Continental Bank v. Phoenix Ins. Co.*, 24 Cal. App. 3d 909, 913, 101 Cal. Rptr. 392, 394 (1972). In the May 24, 1979, transaction, the plaintiff sold five checks to the Kents; it neither gave value nor extended credit in reliance upon these checks. *See Allen State Bank v. Traveler's Indemnity Co.*, 270 So. 2d 270, 273 (La. Ct. App. 1972). In addition, although the plaintiff may have assumed some liability regarding the $425,000 transaction, this potential liability involves breach of fiduciary duty and negligence, and certainly does not arise from any reliance upon the checks. For these reasons, we hold that the plaintiff is not entitled to coverage under the second scenario discussed above.

■ Finally, we consider whether the defendant is liable to the plaintiff for the attorneys' fees and court costs that the plaintiff has paid in this action and the Kent litigation. The blanket bond states:

> "The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability *on account of any loss, claim or damage which if established against the Insured, would constitute a valid and collectible loss . . .* under the terms of this bond. (Emphasis added.)

This section allows recovery for attorneys' fees and court costs when the insured's alleged liability arises from a claim covered under the policy. Because the plaintiff's alleged liability stems from the Kents' claim, which we have found beyond the scope of the policy's coverage, the defendant is not liable for attorneys' fees or court costs.

Thus, although the master erred in several respects, we find that he reached the correct result, and therefore uphold his decision

denying the plaintiff bank's petition. *Cf. Suojanen v. Tardif*, 121 N.H. 1036, 1039, 437 A.2d 310, 312 (1981).

*Affirmed.*

All concurred.