Hillsborough,
No. 4835.

WALDON B. HERSEY *v.* MARYLAND CASUALTY COMPANY.

Argued May 3, 1960.

Decided June 30, 1960.

*Wyman & Bean (Mr. Bean* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse (Mr. Morse* orally), for the defendant.

KENISON, C. J. The principal question in this case is somewhat unique. Is a public liability insurer liable for damages to the insured for delay in making an investigation and for failure to make a timely disclaimer of insurance coverage when in the pre-trial order it is agreed that the occurrence out of which the accident arose was not covered by the public liability policy issued by the defendant to the plaintiff?

The plaintiff purchased from the defendant a Farmer's Comprehensive Liability Policy providing liability coverage for injuries on plaintiff's premises but excluding injury to farm employees unless

specifically declared in the policy, which they were not. One Fiske was injured while working on the farm. The plaintiff notified his insurance agent by letter on September 14, 1955, that "one of the men who is working for me at the farm" was injured and inquired "do I have any insurance which covered this situation, either for his lost time or for the actual medical expenses . . . ?" The agent telephoned this information to the selling agent of the defendant who notified the defendant's claims office in Bangor, Maine, giving the pertinent facts. This office in turn on October 7, 1955, wrote the defendant's claims manager in Boston, Massachusetts, relaying the information given by the plaintiff stating that "although there is some question as to whether or not coverage applies under this policy," it was requested that the case be assigned to the defendant claims office nearest the plaintiff's farm in New Boston, New Hampshire. Despite telephone inquiries by the agent no investigation was made and the plaintiff received no reply for the next four months.

In March 1956, an investigation was made upon receipt of some information that Fiske, the injured party, might not have been an employee of the plaintiff. In March 1956, an adjuster for the defendant informed Fiske that the insurance company would pay hospital and medical bills. This was never done. In April 1956, the Boston claims office informed its selling agent of its conclusion that there was no coverage. In July 1956, Fiske sued the plaintiff who eventually settled the action for $2,000. On July 31, 1956, the defendant's agents visited the plaintiff and explained why there was no coverage. At no time did the plaintiff discuss the case with the injured party, Fiske.

Although the plaintiff was finally convinced on July 31, 1956, that he had no coverage, he had no conviction that his original inquiry in September 1955, had produced a prompt investigation or a timely answer. This case attests to the fact that settlement procedures in liability insurance can be improved. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L. Rev. 1136, 1186 (1954). However our problem is one of legal liability and not an exercise in public relations or a consideration of "changes in policy forms that would create a more practicable relationship between company and insured." Keeton, *supra*.

It is settled law in this state that the liability insurers' obligation to defend suits, including groundless ones, is limited to suits "upon only those claims for which it has assumed liability under the

terms of its policy." *Lumbermen's &c. Co.* v. *McCarthy,* 90 N. H. 320, 321. If there is no coverage, there is no duty to defend an action that is outside the coverage. *Ocean Accident &c. Corp.* v. *Laundry Co.,* 92 N. H. 260, 263; *Desrochers* v. *Casualty Co.,* 99 N. H. 129. For a discussion of this matter see DesChamps, The Obligation of the Insurer to Defend Under Casualty Insurance Policy Contracts, 26 Ins. Counsel J. 580 (1959); Reed, Collection of Judgments by Reaching the Insurance Policy: Main Features of Liability Insurance, 45 Mass. L. Q. 4 (1960).

In 8 Appleman, Insurance Law & Practice, *s.* 4684, *pp.* 12-13, the law is stated as follows: "As we have seen, by the express terms of the policy the insurer is generally required to defend suits against the insured, which the pleadings show to be within the policy coverage, even though such suits be groundless, false or fraudulent. But a distinction must be drawn between groundless suits, and actions which, even if successful, would not be within the policy coverage. Since the insurer's duty to defend is correlative with its duty to pay a judgment which might be obtained against the insured, it is apparent that the insurer has the duty of defending only those actions that are within the terms of the policy, and where there has been no breach of the policy. A few cases have intimated that the duty to defend and the duty to pay judgments are distinct and separate, so that the first might exist even though a policy exclusion operated to avoid coverage. But these cases are in a distinct minority."

If the insurer asserts noncoverage and is mistaken, liability follows. *Albert* v. *Maine Bonding & Casualty Co.,* 144 Me. 20; 40 A. L. R. (2d) 168, 208-212; 11 Ark. L. Rev. 26, 31 (1957). But in the present case there was no coverage and the insurer is not estopped to assert noncoverage even though its optional right under the policy to investigate was tardy and its notification to its policyholder can receive no accolade for promptness. Unlike some jurisdictions, New Hampshire has no statutes providing for percentage penalties and attorneys' fees in cases of insurers' delay in settlement, defense, or disclaimer of liability. *Cf.* Trammell, One State's Experience with the Statutory Remedy for Insurers' Delays — A Problem in Payment, 10 Ark. L. Rev. 439 (1956); 2 Couch on Insurance 2d, *ss.* 21:41, 42 (1959).

Reliance is placed on RSA 412:6 requiring liability insurers to investigate accidents within twenty days after receipt of a written notice of the accident. The statute reads as follows: "Any

insurance company which insures against loss by reason of liability to pay damages to others for damage to property or bodily injuries, including death, shall commence investigation of the circumstances of the accident from which liability may arise within twenty days after the receipt of written notice of said accident." This statute cannot reasonably be interpreted to mean that a company is required to investigate those cases where it plainly appears there is no coverage.

In the present case the defendant was of the opinion when it first received notice of the accident that the policy did not apply. This turned out to be correct although it does not explain why the defendant could not have so notified the plaintiff then and there. That the question of coverage would not be as plain to the plaintiff as to the insurer can be deduced from the Fire Casualty and Surety Bulletins (F. C. & S. Bulletins) published by The National Underwriter Company.[1] But this latter matter of notification is a matter of insurance practice which is not regulated or penalized by statute. If common courtesy or good public relations called for notification, the failure to give it violated no policy provision, statute, or insurance regulation which has been called to our attention. There is no basis for holding the defendant estopped to deny coverage which the policy did not provide because it failed to investigate the claim.

The nonsuit was properly granted and this renders moot other questions which have been argued by the parties on the assumption the nonsuit was erroneous.

*Exceptions overruled.*

All concurred.

[1]. In F. C. & S. Bulletins for Public Liability Iapf-3 (Apr. 1958) appears the following: "A point upon which it is easy to become confused is that *practically everybody who works on the farm* is a 'farm employe,' decidedly including *domestic help* in the farm residence. Though the policy defines 'residence employe' separately and provides all of the coverage as to such employes that the Comprehensive Personal Liability policy does, this does not apply to anyone whose duties are *incidental to the ownership, maintenance or use* of farm premises."