GREAT LAKES CONTAINER CORPO-
RATION, Plaintiff, Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PENN-
SYLVANIA, Defendant, Appellee.

No. 83–1607.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1983.

Decided Feb. 15, 1984.

Theodore Wadleigh, Manchester, N.H.,
with whom Jeffrey H. Karlin, and Wad-
leigh, Starr, Peters, Dunn & Chiesa, Man-
chester, N.H., were on brief, for plaintiff,
appellant.

James O. Barney, with whom Edward M.
Kaplan, R. Carl Anderson, and Sulloway

Hollis & Soden, Concord, N.H., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, and COFFIN and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellant Great Lakes Container Corporation appeals from a summary judgment ruling that no coverage was provided under a comprehensive general liability insurance policy issued to Great Lakes by defendant-appellee National Union Fire Insurance Company. On January 28, 1983, Great Lakes and others were sued by the United States for contaminating soils, ground waters and surface waters by pollutants and for unauthorized discharge of pollutants. Great Lakes asked National Union to assume defense of the suit and pay any damages assessed against it. National Union's refusal to do so resulted in a declaratory judgment action leading to the summary judgment which is the subject of this appeal.

■ We agree with the parties that, because the insured risk is located in New Hampshire, New Hampshire law controls. *Consolidated Mutual Insurance Company v. Radio Foods Corporation*, 108 N.H. 494, 240 A.2d 47, 48–49 (1968).

The case centers on the effect to be given exclusion (f) in the policy which provides:

This insurance does not apply . . . (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

I.

Great Lakes first contends that, because National Union failed to obtain approval of the policy form containing exclusion (f) from the New Hampshire Commissioner of Insurance as required by N.H.Rev.Stat.Ann.

ch. 412, § 2 (1977), the exclusion is inoperative. National Union does not claim that the policy form was approved. The question, therefore, is what effect is to be given this failure to follow the statutory requirement which provides:

No policy covered by RSA 412:1 shall be issued or delivered until a copy of the form thereof has been filed with the insurance commissioner, nor until the expiration of 30 days after it has been so filed, unless the commissioner sooner gives his written approval thereto. If the commissioner shall give written notice to the insurer which has filed such form that it does not comply with the requirements of this chapter it shall be unlawful thereafter for the insurer to issue any policy in such form. Every policy issued by an insurer on an unapproved form shall constitute a separate violation under RSA 412:4.

N.H.Rev.Stat.Ann. ch. 412, § 2.

The final sentence of the statute refers to N.H.Rev.Stat.Ann. ch. 412 § 4 which prescribes the penalties for failure to obtain approval of the policy form:

If any insurer shall issue any policy in violation of the provisions of this chapter, or any policy which it has been forbidden to issue by the commissioner under the provisions hereof, the commissioner may, upon hearing, suspend or revoke said insurer's certificate of authority or license for a period not to exceed 3 years, impose an administrative fine in lieu of such suspension or revocation, or take such other administrative action against the offending company as the commissioner, in his discretion, may determine. The commissioner shall not be bound by the limitations on penalty contained in RSA 400–A:15, III in the enforcement of this section.

N.H.Rev.Stat.Ann. ch. 412, § 4. The statute referred to, N.H.Rev.Stat.Ann. ch. 400–A, § 15, III, provides for a suspension or revocation of certificate of authority or license or a fine not to exceed $2,500.

No action was taken by the commissioner in this case. There is nothing in the relevant statutes suggesting that an automatic nullification of a policy exclusion results from failure to obtain approval of a policy form as a whole. The cases cited by Great Lakes are inapposite. They construe different statutes and merely void changes in policy language or interpretation where the basic form apparently was already approved. In *American Employers Insurance Company v. Worden,* 92 N.H. 249, 29 A.2d 417 (1942) (applying N.H.Laws of 1937, ch. 161, § 16, codified as amended at N.H.Rev. Stat.Ann. ch. 264, § 14 I), the court held that a clause in an employer's motor vehicle liability insurance policy excluding certain coverage was valid if the insurance commissioner had approved the form of the policy, including the exclusion, but void if he had not. Similarly, a more recent case holds that an insurer's unilateral change in the interpretation of a health insurance policy not approved by the insurance commissioner will not be recognized. *Trombly v. Blue Cross/Blue Shield of New Hampshire-Vermont,* 120 N.H. 764, 423 A.2d 980, 982 (1980) (applying N.H.Rev.Stat.Ann. ch. 419, § 6 and ch. 420–A, § 6). Here, there was no unilateral change in the policy.

At base Great Lake's argument proves too much, for no part of the policy was presented to the insurance commissioner for approval. Plaintiff provides no viable criteria for voiding only exclusion (f), but not the policy as a whole. To be sure, Great Lakes introduced in evidence an uncontested affidavit by the assistant insurance commissioner stating in pertinent part as follows. On September 28, 1970, the then insurance commissioner announced that the New Hampshire Insurance Department formally disapproved endorsement forms contained in general liability policies which excluded coverage for pollution and contamination causing damages or injuries. Since that announcement, it has been the policy of the insurance commissioner not to approve policies containing exclusions similar to exclusion (f). If the National Union's policy form had been submitted to the insurance commissioner pursuant to N.H.Rev.

Stat.Ann. ch. 412, § 2, he would not have approved the issuance of the policy with exclusion (f) contained therein.

We agree with the district court that this policy statement could not be legally enforced because it failed to meet the requirements of the New Hampshire Administrative Procedures Act, N.H.Rev.Stat.Ann. ch. 541–A. We adopt the district court's opinion on this issue.

We, therefore, conclude that exclusion (f) was part of the policy at the time suit was brought against Great Lakes by the United States.

II.

The next issue is whether exclusion (f) unambiguously precluded coverage. We agree with Great Lakes that the insurer has the burden of proving noncoverage. We disagree, however, that this means that National Union had to prove facts showing that exclusion (f) applied. Under New Hampshire law, the complaint and the policy alone may be sufficient for a determination of no coverage. *Aetna Insurance Company v. State Motors, Inc.,* 109 N.H. 120, 244 A.2d 64 (1968). Independent evidence, of course, may be needed if the complaint in the underlying action does not on its face establish lack of coverage. *Moore v. New Hampshire Insurance Company,* 122 N.H. 328, 444 A.2d 543 (1982); *Allstate Insurance Company v. Carr,* 119 N.H. 851, 409 A.2d 782 (1979).

We turn, therefore, to the allegations of the complaint. Paragraph 24 describes the site of Great Lakes' business operation as being adjacent to a small stream that enters a wetland that is a source of water for a small recreational pond and lying above an aquifer fed by another stream that is north of the site. The aquifer runs toward the wetland and the recreational pond. The specific allegations of pollution are contained in paragraphs 46 to 55:

*Great Lakes Container Corporation Site*

46. The Great Lakes Container Corporation site is composed of approximately

seven acres of land owned by Defendant, Great Lakes Container Corporation, and an additional seven acres leased from Defendant, The Concord Realty Trust.

47. The site is unsecured by a fence, gate or other protective barrier.

48. Defendants, International Mineral and Chemical Corporation and Great Lakes Container Corporation, operated a barrel reconditioning business on the site. On this site, there was a storage area where up to 60,000 drums are stored pending reconditioning, a plant to recondition barrels, a small office and a storage area for reconditioned barrels.

49. In the course of reconditioning barrels, used barrels are emptied of all chemicals and other wastes and residues, washed and rinsed and stripped of rust by various industrial processes some of which include use of caustic solutions, physically dedented and tightened, tested, painted and sold.

50. Wastes from used drums and the reconditioning operation have been deposited and discharged on the ground of the Great Lakes Container Corporation site, and have been and are stored on the site.

51. Wastes discharged and deposited on the ground have contaminated the soil, migrated toward groundwater and entered groundwater.

52. Groundwater has been and continues to be contaminated. The wells that provided drinking water in Great Lakes Container Corporation's plant and office have been contaminated and Defendant, Great Lakes Container Corporation, has discontinued use of the wells for drinking water.

53. Groundwater flow carries the contaminants toward the wetlands and Country Pond. The groundwater is used by local residents as a drinking water supply.

54. Wastes deposited on the ground have entered and may enter surface waters.

55. On or about March 10, 1980, there was a discharge of pollutants from the plant into the stream identified in Paragraph 24. The discharge was not authorized by permit.

The basic coverage clause under the policy provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent[.]

Occurrence is defined under the policy as follows:

"[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured[.]

Exclusion (f) provides:

This insurance does not apply . . . (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

We agree with the district court that when the policy is read against the complaint there is no ambiguity and exclusion (f) applies. The government has alleged that Great Lakes is liable because pollution and contamination of the soil, surface and subsurface waters has taken place as a concomitant of its regular business activity. Property damage resulting from such activity falls squarely within the language of exclusion (f). There is no "occurrence" within the meaning of the policy

alleged, nor any allegation of a sudden and accidental discharge.

■ Finally, Great Lakes argues that regardless of the applicability of exclusion (f) National Union has a duty to defend the action brought by the United States, as distinguished from its duty to pay damages. Here again, it is the complaint that controls.

It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit. *Hersey v. Maryland Casualty Co.,* 102 N.H. 541, 542–43, 162 A.2d 160, 162 (1960). The duty of an insurer to defend is not necessarily coextensive with its duty to pay. We draw a distinction, however, between groundless suits giving rise to the duty to defend, and actions which, even if successful, would not be within the policy and against which the insurer has no duty to defend. *Id.* at 543, 162 A.2d at 162.

*United States Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.,* 461 A.2d 85, 87 (N.H. 1983).

It is true, as appellant points out, that one of the factors to be considered in determining whether there is a duty to defend is the reasonable expectation of the insured. *Id.*

In a situation like the present the rule in this State has long been that the policy should be considered as a whole in the light of all the circumstances and interpreted as a reasonable person in the position of the insured would understand it. *Hoyt v. Insurance Company,* 92 N.H. 242, 243, 29 A.2d 121, 148 A.L.R. 484 [ (1942) ]; *Lalos v. Tickler,* 103 N.H. 292, 295, 170 A.2d 843 [ (1961) ]. However in so doing it is fair to interpret the policy in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured.

*Aetna Insurance Company v. State Motors, Inc.,* 244 A.2d at 67. In light of the allegations of the complaint, the words of the policy, and the type of activity in which Great Lakes was engaged, we do not think that "a more than casual reading of the policy" by "an ordinary intelligent insured" could result in a reasonable expectation that National Union had a duty to defend Great Lakes.

*Affirmed.*