UNION MUTUAL FIRE INSURANCE COMPANY

v.

Albert HATCH, d/b/a 202 Beanstalk; Robert McNichol

v.

Raymond TOWLE, d/b/a Stevens Insurance Agency.

Civ. No. 92–53–SD.

United States District Court, D. New Hampshire.

Oct. 26, 1993.

Gregory A. Holmes, Manchester, NH, for plaintiff.

James E. Morris, Concord, NH, for Hatch.

David W. Hess, Manchester, NH, for McNichol.

Russell F. Hilliard, Concord, NH, for Towle.

## ORDER

DEVINE, Senior District Judge.

In this declaratory judgment action, the court is asked to determine whether, pursuant to the terms of an insurance policy, plaintiff Union Mutual Fire Insurance Company is required to defend or indemnify defendant Albert Hatch in a pending state court proceeding.

Union Mutual filed its petition for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 (Supp.1993). The court's jurisdiction is based upon a diversity of citizenship. 28 U.S.C. § 1332(a)(1) and (c)(1) (Supp.1993). Presently before the court are (1) plaintiff's motion for partial summary judgment and (2) defendant's motion for summary judgment.

### 1. Background

From 1963 to 1992, defendant Hatch owned certain property at the intersection of Horse Corner Road and Routes 4, 9, and 202

in Chichester, New Hampshire. Affidavit of Albert Hatch at ¶ 2. During the same time period, Hatch owned and operated Beanstalk, Inc., a retail gasoline service station and convenience store, on said property. *Id.* at ¶ 3. Hatch ceased operation of his gasoline station and convenience store business in January 1992, following an eminent domain taking by the State of New Hampshire. *Id.* at ¶ 23.

Between 1988 and 1991 Hatch purchased two consecutive business insurance policies for the Beanstalk gasoline station and convenience store from Union Mutual. These policies were purchased through Raymond Towle of the Stevens Insurance Agency in Epsom, New Hampshire. *Id.* at ¶ 6. The first of these two policies, identified as Policy No. SBP 116 089, was effective from June 9, 1989, to June 9, 1990. Policy No. SBP 116089 (attached to Union Mutual's motion for partial summary judgment as Exhibit E). The second policy, identified as Policy No. BO 0940725, was effective from June 9, 1990, to June 9, 1991. Policy No. BO 0940725 (attached to Union Mutual's motion for partial summary judgment as Exhibit F and to Hatch's motion for summary judgment as Exhibit D).

Hatch states that on or about October 15, 1990, after receiving complaints from his customers about having water in their automobile gasoline tanks, he discovered that one of his underground storage tanks was leaking. Deposition of Albert Hatch at 36.

In November 1990, defendant Robert McNichol allegedly discovered that the soil and groundwater on property he owned near the Hatch property was contaminated with various hazardous substances. Following that discovery, McNichol filed a writ of summons against Hatch in Merrimack County (New Hampshire) Superior Court seeking, inter alia, to recover damages for the soil and groundwater contamination on his property under theories of private nuisance, negligence, and strict liability. Writ of Summons in *McNichol v. Hatch, et al,* Merrimack County Superior Court No. 91–C–381, dated April 24, 1991 (attached to Union Mutual's motion for partial summary judgment as Exhibit D and to Hatch's motion for summary

judgment as Exhibit A). In his writ, McNichol alleges that this contamination was caused by the discharge and migration of gasoline from the underground storage tanks on the Hatch property. *Id.* at ¶ 11.

After receiving notice of the McNichol suit, Hatch sought coverage from his insurer, Union Mutual, for the claims made against him. Hatch Affidavit at ¶ 16. In response, Union Mutual denied that the terms of the policies issued to Hatch provided coverage for the claims set forth in the McNichol suit. Union Mutual's Motion for Partial Summary Judgment at ¶¶ 2–4.

Subsequently, on January 23, 1992, Union Mutual filed the instant petition seeking a declaration that Union Mutual is not obligated to defend or indemnify Hatch under either of the policies it issued to him for the claims made by McNichol in the underlying state court action. In response to Union Mutual's petition, Hatch filed a counterclaim seeking, inter alia, a declaration that Union Mutual is obligated to defend and indemnify him as to the McNichol suit. Hatch also filed a third-party complaint against Raymond Towle, d/b/a Stevens Insurance Agency (Towle), alleging that if the Union Mutual policies do not provide coverage for the claims brought against him in the McNichol suit, then Towle is personally liable "for having misled [Hatch] into believing that such protection existed." Third–Party Complaint at ¶ 3.

The cross-motions for summary judgment filed by Union Mutual and Hatch present the narrow issue of whether the language of Policy No. BO 0940725 requires Union Mutual to defend or indemnify Hatch as to the McNichol suit.

### 2. *Discussion*

#### a. *Standard for Summary Judgment*

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the burden of " 'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ When a court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513. Nonetheless, Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra,* 477 U.S. at 322, 106 S.Ct. at 2552.

*b. Interpretation of the Policy*

The parties agree that New Hampshire law applies to the substantive issues raised in this action. *See Moores v. Greenberg,* 834 F.2d 1105, 1107 n. 2 (1st Cir.1987) (where parties agree as to what substantive law applies, a federal court sitting in diversity jurisdiction should comply).

■ Under New Hampshire law, the "final interpretation of the language in an insurance policy is a question of law." *Limoges v. Horace Mann Ins. Co.,* 134 N.H. 474, 476, 596 A.2d 125, 126 (1991) (quoting *Curtis v. Guaranty Trust Life Ins.,* 132 N.H. 337, 340, 566 A.2d 176, 178 (1989)).

■ New Hampshire recognizes "the right of an insurer to contractually limit the extent of its liability" provided the insurer does so "through clear and unambiguous policy language." *Curtis v. Guaranty Trust Life Ins. Co.,* 132 N.H. 337, 340, 566 A.2d 176, 178 (1989) (citations omitted). Indeed, "if an insurance policy contains an exclusion purporting to limit a broad grant of coverage, the exclusion must be 'in terms which would effectively convey [it] to a reasonable person

in the position of the insured.'" *Merchants Ins. Group v. Warchol,* 132 N.H. 23, 27, 560 A.2d 1162, 1164 (1989) (quoting *Royal Globe Ins. Co. v. Poirier,* 120 N.H. 422, 427, 415 A.2d 882, 885 (1980)). In addition, "the insurer must clearly state the exclusion in conjunction with whatever sections it is intended to modify." *MacMillin Co. v. Aetna Casualty & Surety Co.,* 135 N.H. 189, 192, 601 A.2d 169, 171 (1991) (quoting *Commercial Union Assurance Cos. v. Gollan,* 118 N.H. 744, 749, 394 A.2d 839, 843 (1978)).

■ When interpreting an insurance policy, New Hampshire courts construe the language of the policy "as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." *Haley v. Allstate Ins. Co.,* 129 N.H. 512, 514, 529 A.2d 394, 396 (1987).

■ The method of interpretation employed by New Hampshire courts "is first to determine whether the language in question is ambiguous." *M. Mooney Corp. v. U.S. Fidelity & Guar. Co.,* 136 N.H. 463, 470, 618 A.2d 793, 797 (1992). "[A]n exclusionary clause [is] ambiguous if 'reasonable disagreement between the contracting parties is possible.'" *Id.* (quoting *Smith v. Liberty Mut. Ins.,* 130 N.H. 117, 122, 536 A.2d 164, 166 (1987)).

■ In determining whether policy language is ambiguous, the court will "not force an ambiguity where none is apparent merely to resolve coverage in favor of the insured." *Concord Gen. Mut. Ins. Co. v. McCarty,* 135 N.H. 316, 319, 604 A.2d 573, 575 (1992) (quoting *Cutter v. Maine Bonding & Casualty Co.,* 133 N.H. 569, 576, 579 A.2d 804, 808 (1990)). Instead, the court will "look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions." *LaSorsa v. UNUM Life Ins. Co.,* 955 F.2d 140, 148 (1st Cir.1992) (quotations omitted). However, if the language of a policy is determined to be ambiguous, the court will apply New Hampshire's "rule of strict construction" and construe the policy "in favor of the insured and against the insurer." *Id.* at 147.

■ Further, when insurance coverage is disputed, New Hampshire law places the burden of proving that no coverage exists on the insurer. *Laconia Rod & Gun Club v. Hartford Accident & Indem. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 250 (1983).

### c. Coverage Under the Policy

In moving for summary judgment, Union Mutual argues that the policy at issue does not cover the damage allegedly caused to McNichol's property by the discharge and migration of gasoline from an underground storage tank on Hatch's property because of the policy's pollution exclusion. Hatch asserts that (1) the language of the pollution exclusion is ambiguous and must therefore be construed in favor of coverage, (2) the pollution exclusion does not apply to all of the claims raised in the McNichol suit, and (3) his reasonable expectations of coverage must be honored.

### (1) The Terms of the Policy

■ The relevant portions of the Businessowners Liability Coverage Form of the policy provide as follows:

**A. COVERAGES**

**1. Business Liability**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result....

. . . .

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage—**

This insurance does not apply to:

. . . .

f. (1) 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

. . . .

**F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

. . . .

3. **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

12. **"Property Damage"** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrences" that caused it.

### (2) Is the Policy Ambiguous?

The claims in the McNichol writ seek damages for property damage allegedly caused by the discharge and migration of gasoline from Hatch's property. In determining whether these claims of liability are covered under the policy at issue, the court must first consider whether its language is ambiguous. *M. Mooney Corp., supra*, 136 N.H. at 470, 618 A.2d 793. The focus of this analysis is the policy's pollution exclusion.

The parties have not presented, nor has this court discovered, any New Hampshire cases which interpret a pollution exclusion in an insurance policy.

" 'In the absence of a definitive ruling by the highest state court, a federal court may consider "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide

the issue at hand," taking into account the broad policies and trends so evinced.'" *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 903 (1st Cir.1988) (*en banc*) (quoting *Michelin Tires, Etc. v. First Nat'l Bank of Boston*, 666 F.2d 673, 682 (1st Cir.1981) (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980))), *cert. denied*, 488 U.S. 1043 [109 S.Ct. 869, 102 L.Ed.2d 993] (1989); *see also* 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4507 (West 1982 & Supp.1992) ("In vicariously creating state law for purposes of deciding the case before it, the federal court may consider all available legal sources ...."). Further, "[w]here unsettled questions are involved," a federal court can assume that the state's "highest court would adopt the view which, consistent with its precedent, seems best supported by the force of logic and the better-reasoned authorities." *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731 (1st Cir. 1990).

*Town of Peterborough v. Hartford Fire Ins. Co.*, 824 F.Supp. 1102, 1109–10 (D.N.H.1993).

In *Great Lakes Container Corp. v. National Union Fire Ins. Co.*, 727 F.2d 30 (1st Cir.1984), the court was asked to decide whether, under New Hampshire law, the pollution exclusion in the insured's policy unambiguously precluded coverage for soil and groundwater contamination caused by the discharge of chemicals, wastes, and residues. Said exclusion provided,

> This insurance does not apply ... (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*Id.* at 33. Finding "that when the policy is read against the complaint there is no ambiguity and [the] exclusion [ ] applies," the court held that the insurer had no duty to defend the underlying suit against its insured. *Id.* at 33–34.

The court notes that the pollution exclusion interpreted in *Great Lakes Container* was qualified by an exception which states "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental," *id.*, whereas the pollution exclusion at issue contains no such exception. This distinction gives *Great Lakes Container* even greater weight where, as here, the pollution exclusion in question is not qualified by any exceptions. Further, the distinction between the "qualified" pollution exclusion in *Great Lakes Container* and the "absolute" pollution exclusion before this court is immaterial since there was no allegation of sudden or accidental discharge in *Great Lakes Container*. As such, the pollution exclusion language interpreted by the First Circuit in *Great Lakes Container* is essentially the same language this court is asked to interpret.

Since the First Circuit's decision in *Great Lakes Container*, the court notes that the insurance industry has moved away from using qualified pollution exclusions in favor of the broader absolute pollution exclusions. The increasingly widespread use of these absolute pollution exclusions, which were created by eliminating the "sudden and accidental" exception, appears to have resulted from the insurance industry's "dissatisfaction with the judicial constructions given to the standard pollution exclusion and the enormous expense and exposure resulting from the explosion of environmental litigation." 7A John A. Appleman, *Insurance Law and Practice* § 4499.05 (Supp.1992). Indeed, courts faced with the task of interpreting the "sudden and accidental" exception in past years were unable to discern a noticeable trend or a majority position. *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1195 (3d Cir.1991), *rev'd on other grounds*, 970 F.2d 1267 (3d Cir.1992); *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77, 92–93 (1st Cir. 1992) (citing *New Castle County, supra*, at 1195). Instead, such courts found the authority "to be evenly divided ... with about half of the cases holding that the [pollution exclusion] clause bars coverage, and with the

other half holding that it does not." *New Castle County, supra,* 933 F.2d at 1195–96 (listing the cases). Consequently, insurers have begun to eliminate the "sudden and accidental" exception, thereby creating "absolute" pollution exclusions which "are considered clear, unambiguous, and enforceable." 7A Appleman, *supra,* at § 4499.05. *See also Vantage Dev. Corp. v. American Env't Technologies Corp.,* 251 N.J.Super. 516, 598 A.2d 948 (1991) (describing the evolution of pollution exclusions).

The elimination of the "sudden and accidental" exception has led the vast majority of courts asked to interpret the resulting "absolute" pollution exclusions to conclude that such exclusions are unambiguous and operate to exclude coverage for all claims alleging damage caused by pollution. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118 (2d Cir.1990); *LaSalle Nat'l Trust, N.A. v. Schaffner,* 818 F.Supp. 1161 (N.D.Ill.1993); *Bureau of Engraving v. Federal Ins. Co.,* 793 F.Supp. 209 (D.Minn.1992), *aff'd,* 5 F.3d 1175 (8th Cir.1993); *Park–Ohio Indus., Inc. v. Home Indem. Co.,* 785 F.Supp. 670 (N.D.Ohio 1991), *aff'd,* 975 F.2d 1215 (6th Cir.1992); *Colonial Tanning Corp. v. Home Indem. Co.,* 780 F.Supp. 906 (N.D.N.Y.1991); *Alcolac, Inc. v. California Union Ins. Co.,* 716 F.Supp. 1546 (D.Md.1989); *Guilford Indus., Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792 (D.Me.1988), *aff'd,* 879 F.2d 853 (1st Cir.1989); *Vantage Dev. Corp. v. American Env't Technologies Corp.,* 251 N.J.Super. 516, 598 A.2d 948, 954 (1991); *Budofsky v. Hartford Ins. Co.,* 147 Misc.2d 691, 556 N.Y.S.2d 438 (1990).

Moreover, those courts which have construed absolute pollution exclusions and found coverage have done so on grounds inapposite to the issues at hand. *See, e.g.,* *Titan Holdings Syndicate, Inc. v. Keene,* 898 F.2d 265 (1st Cir.1990) (claim of "personal injury" not excluded from coverage by the policy's pollution exclusion; claims for damage caused by "excessive noise and light" not excluded from coverage because "excessive noise and light" are not "pollutants" under the policy); *Gotham Ins. Co. v. GLNX, Inc.,* 1993 WL 312243, 1993 U.S.Dist. LEXIS 10891 (S.D.N.Y. Aug. 6, 1993) (claim alleging property damage from the physical impact of a train derailment not excluded from coverage by pollution exclusion); *American Star Ins. Co. v. Ernest L. Grice & Sons, Inc.,* 121 Wash.2d 869, 854 P.2d 622 (1993) (claim covered because of a hostile fire exception to the policy's pollution exclusion); *Jussim v. Massachusetts Bay Ins. Co.,* 415 Mass. 24, 610 N.E.2d 954 (1993) (finding that a homeowner's policy did not clearly and unambiguously exclude coverage for pollution caused by an antecedent negligent act).[1]

In light of the above, the court determines that the New Hampshire Supreme Court would adopt the view that the language of the absolute pollution exclusion set forth in Hatch's policy is clear and unambiguous. Accordingly, in turning to the question of whether the policy provides coverage for the claims set forth in the McNichol writ, the court will construe the policy "as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole." *Haley, supra,* 129 N.H. at 514, 529 A.2d 394.

### (3) Is Gasoline a "Pollutant"?

■■■ The policy at issue defines pollutant to include "*any* solid, liquid, gaseous or thermal irritant or contaminant." (Emphasis added.)

---

1. In *Jussim,* the policy's general exclusion section contained a preamble providing: "We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.,* 610 N.E.2d at 957–58. Because the pollution exclusion did not follow this preamble, the court found that the policy did not clearly and unambiguously exclude coverage for pollution caused by an antecedent negligent act. *Id.* 610 N.E.2d at 956–57 n. 3.

Here, the general exclusion section of the liability coverage form of the policy at issue contains no such preamble. However, the court notes that this preamble does appear in the general exclusions section of the property coverage form of the policy. Nonetheless, reading the policy as a whole, the court finds that the appearance of this preamble in the property coverage form of the policy, which is not implicated by the underlying suit, does not render ambiguous the pollution exclusion in the liability coverage form of the policy.

Although the terms within the definition of pollutant—'irritant' and 'contaminant'—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum*, but may rely on the ordinary meaning of words, *Robbin's Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 764, 435 A.2d 507, 509 (1981), and on the use of illustrative examples.

*Titan Holdings Syndicate, supra*, 898 F.2d at 269. Construing these words "according to their plain, ordinary, and popular definitions," *LaSorsa, supra*, 955 F.2d at 148, the court finds that "the policy definition of pollutants is workable" and unambiguous. *Titan Holdings Syndicate, supra*, 898 F.2d at 269.

Furthermore, the court finds that gasoline is a pollutant under the terms of the policy at issue. *See Western World Ins. Co., supra*, 922 F.2d 118 (pollution exclusion precluded coverage for fuel oil spill from storage tank); *Guilford Indus., supra*, 688 F.Supp. 792 (finding that fuel oil is a pollutant under an absolute pollution exclusion). *See also United States v. Standard Oil Co.*, 384 U.S. 224, 226, 86 S.Ct. 1427, 1428, 16 L.Ed.2d 492 (1966) (the presence of aviation gasoline in waterways is "both a menace to navigation and a pollutant").

The court finds support for this conclusion in New Hampshire Revised Statutes Annotated (RSA) 146–A, Oil Spillage in Public Waters, and RSA 146–D, Oil Discharge and Disposal Fund, both of which indicate that New Hampshire considers gasoline to be a pollutant.

In RSA 146–A, which was enacted "to cope with the problem of pollution from the spillage or discharge of oil," RSA 146–A:1 (Supp. 1992), "oil" is defined as

petroleum products and their by-products of any kind, and in any form including, but not limited to, petroleum, fuel, sludge, crude, oil refuse or oil mixed with wastes and all other liquid hydrocarbons regardless of specific gravity and which are used as motor fuel, lubricating oil, or any oil used for heating or processing.

RSA 146–A:2, III (Supp.1992).

Similarly, RSA 146–D, which was enacted to assist in the cleanup of pollution caused by the discharge and disposal of oil, defines oil as "gasoline and diesel products" and also adopts the definition of "oil" in RSA 146–A:2, III. RSA 146–D:1 and D:2, III (1990 & Supp.1992). In addition, the statement of purpose set forth in RSA 146–D:1 provides in part that

[t]he general court finds that gasoline and diesel fuel, due to their extreme fluidity and suspected carcinogenic qualities, comprise a sufficiently distinct class of property which represents a potential serious health and safety problem to the citizens of New Hampshire. In particular, gasoline and diesel fuel present a potential threat to the quality of New Hampshire's groundwater and environment because of the speed with which these products are able to flow into, and contaminate, valuable groundwater supplies.

Accordingly, and in light of the above, the court concludes that gasoline is a pollutant under the policy in question.

### (4) Union Mutual's Duty to Defend

Pursuant to the terms of the policy, Union Mutual has clearly assumed a duty to defend any suit seeking to hold Hatch liable for damages or injuries covered under the policy. In order to determine if Union Mutual is obligated to defend the McNichol suit under the policy, the court "must compare the policy's language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant." *Titan Holdings Syndicate, supra*, 898 F.2d at 271 (emphasis in original). The court also notes that

'It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit.' *United States Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983) (citing *Hersey v. Maryland*

*Casualty Co.,* 102 N.H. 541, 542–43, 162 A.2d 160, 162 (1960)).

*Id.* at 269. In addition,

> [t]he duty to defend is triggered even where the complaint contains several causes of action or theories of recovery, but the insurer's duty to defend extends only to those causes of action that would fall under the policy if they were proved true.

*White Mt. Constr. Co. v. Transamerica Ins. Co.,* 137 N.H. 478, 482, 631 A.2d 907, 909 (1993) (citations omitted).

▆ McNichol's claim of nuisance is based on the allegation that the discharge and migration of gasoline has "unreasonably and substantially interfered with the Plaintiff's use of his property." Writ at ¶ 18. The policy excludes coverage for " 'property damage' arising out of the actual, alleged or threatened discharge … [or] migration … of pollutants … at or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." In addition, "property damage" is defined by the policy to include "[p]hysical injury to tangible property, *including all resulting loss of use of that property.*" (Emphasis added.) Accordingly, the court finds that the language of the policy clearly and unambiguously excludes coverage for the claim of nuisance set forth in McNichol's writ.

▆ McNichol's claim of negligence is based on the allegation that as a result of Hatch's negligence "gasoline and/or other hazardous materials were discharged," thereby causing him to suffer property damage. Writ at ¶¶ 24–25. In addition, McNichol alleges that Hatch is strictly liable for the property damage he suffered as a result of the discharge and migration of gasoline from Hatch's property. *Id.* at ¶¶ 26–36. The court finds that McNichol's claims of negligence and strict liability are claims "arising out of" the alleged discharge and migration of pollutants from Hatch's property and are therefore excluded from coverage by the policy's pollution exclusion. *See, e.g., Guilford Indus., supra,* 688 F.Supp. at 795 (concluding that the deletion of the sudden and accidental exception to the pollution exclusion indicates

"that *all* discharge or escapes of pollutants are to be excluded" (emphasis in original)), *aff'd,* 879 F.2d 853 (1st Cir.1989); *Vantage Dev. Corp. v. American Env't Technologies Corp.,* 251 N.J.Super. 516, 598 A.2d 948, 954 (1991) ("By its terms, the [absolute] pollution exclusion is not geared to fault, responsibility or causation on the part of or by the insured. Coverage is excluded for all pollution claims no matter how caused.").

Thus, the unambiguous language of the policy as a whole, and the pollution exclusion in particular, clearly excludes the claims asserted in the McNichol writ from coverage. As such, the court finds that under the terms of Policy No. BO 0940725, Union Mutual has no duty to defend or indemnify Hatch in the McNichol suit.

#### *(5) Hatch's Reasonable Expectations of Coverage*

Hatch also argues that even if the language of the policy is read to exclude coverage, his reasonable expectations of coverage must be honored because the policy "is so constructed that a reasonable man in the position of the insured would not attempt to read it." *Storms v. United States Fidelity & Guar. Co.,* 118 N.H. 427, 430, 388 A.2d 578, 580 (1978); *Titan Holdings Syndicate, supra,* 898 F.2d at 270. The court disagrees. While the policy Hatch obtained from Union Mutual is long, it is not complex. The liability portion of the policy describes the policy's "coverages" followed by its "exclusions". Moreover, the unambiguous pollution exclusion is clearly set forth in the "exclusions" section of the policy " 'in terms which would effectively convey [it] to a reasonable person in the position of the insured.' " *Merchants Ins. Group, supra,* 132 N.H. at 27, 560 A.2d 1162 (quotation omitted). The court cannot say that a reasonable person in Hatch's position would not attempt to read this policy. Therefore, the clear and unambiguous terms of the policy, rather than Hatch's reasonable expectations of coverage, control the outcome of this matter. *Titan Holdings Syndicate, supra,* 898 F.2d at 270.

#### *Conclusion*

For the reasons set forth above, Union Mutual's motion for partial summary judg-

ment (document no. 24) is granted, and defendant's motion for summary judgment (document no. 28) is denied.[2]

SO ORDERED.

---

**2.** Because Hatch has not prevailed in the instant action at this juncture, the court declines to award him reasonable attorney's fees and costs. *See* RSA 491:22–b (award only available "if the insured prevails in the action at issue").